IN THE MATTER OF: MRS. ROBERT ADAIR, REPRESENTATIVE OF MAGGIE BANGE, Deceased v. ORRELL'S MUTUAL BURIAL ASSOCIATION, INC.

No. 95

(Filed 25 January 1974)

1. Burial Associations; Constitutional Law § 25— burial association contract — right of legislature to change by statute

The General Assembly may reserve the right to amend or repeal bylaws and regulations of a Mutual Burial Association which it created so as to bind the Association and its members, but the exercise of the powers of amendment or repeal is limited by the rule that any such subsequent amendment or repeal must be reasonable and within the scope and purpose of the original contract.

2. Burial Associations; Constitutional Law § 25— payment of funeral benefits — provision for amendment of contract by law — statute not impairment of contract

Where the contract which defendant burial association entered with its members was made with the specific reservation that it could be amended by act of the General Assembly, enactment of a statute which permitted payment of funeral benefits in cash to the funeral director who rendered decedent services, though changing the terms of the contract previously entered between deceased and the burial association, did not result in impairment of the contract in violation of Art. I, § 10 of the U. S. Constitution.

3. Burial Associations; Statutes § 11— conflicting statutes — later statute given effect

Provisions of G.S. 58-226 requiring that a funeral benefit consist only of a funeral in merchandise and service, that no cash be paid,

and that services be rendered by the official funeral director of the Association when a member dies within the territory served by him must yield to the subsequently enacted provisions of G.S. 58-224.2 permitting payment of funeral benefits in cash to one other than the Association's official funeral director, since G.S. 58-224.2 represents the latest expression of legislative will and intent.

APPEAL by defendant from *Seay, J.,* 19 February 1973 Session RANDOLPH Superior Court.

This proceeding was instituted before the Burial Commissioner of North Carolina pursuant to G.S. 58-241.4 seeking a decision requiring Orrell Mutual Burial Association (Orrell) to pay in cash, benefits due its deceased member Maggie Bange. Orrell appealed from the Burial Commissioner's decision directing it to pay the $200 benefit in cash to the represesntative of Maggie Bange. The matter came on for trial *de novo* in Randolph County Superior Court where the parties waived a jury trial and the case was heard on stipulated facts. These facts disclosed the following: Maggie Bange joined Orrell Burial Association on 7 September 1959 and remained a member in good standing until her death on 2 November 1971. Upon her death, she was entitled to maximum funeral benefits of $200. At the request of the persons contracting for her burial, Cumby Mortuary, Inc. (Cumby) furnished all services incident to Mrs. Bange's burial. Mrs. Bange's representatives requested Orrell, both before and after the funeral, to pay to Cumby the full benefits due under Maggie Bange's certificate of membership in its Association. Orrell has refused to pay Cumby or Mrs. Bange's represesnatives any amount. Cumby Mutual Burial Association, Inc. is a duly organized Burial Association and is in good standing under the rules and regulations of the North Carolina Burial Association laws. Cumby Mortuary, Inc. was the official funeral director of Cumby Burial Association, Inc.

It was stipulated that if the Court should rule cash benefits to be due and payable under the certificate issued to Maggie Bange, the payments should be made to Cumby Mutual Burial Association, Inc., Mrs. Robert Adair and Mr. Charles Walter Cadwell.

The trial judge, after finding facts consistent with those above recited, adjudged and decreed that Orrell pay to Cumby Mortuary, Inc., Mrs. Robert Adair and Mr. Charles Walter Cadwell the sum of $200 in cash, together with the costs of the action.

---

---

Defendant Orrell appealed, and the North Carolina Court of Appeals affirmed. Defendant appealed from the decision of the Court of Appeals pursuant to G.S. 7A-30(1).

*Miller, Beck and O'Briant, by Adam W. Beck, for plaintiff appellee.*

*DeLapp and Hedrick, by Robert C. Hedrick for defendant appellant.*

BRANCH, Justice.

Defendant contends that the decision of the Court of Appeals affirming the judgment of the Superior Court is erroneous because it approved a statutory change which resulted in impairment of the obligations of a contract.

Article I, Section 10, Clause 1 of the United States Constitution provides: "No State shall . . . pass any . . . law impairing the obligations of contracts. . . . "

Prior to 1971, Mutual Burial Associations provided benefits to their members only in merchandise and services. These services were provided solely by the official funeral director of the Burial Association of which the deceased person was a member, when the member died within the territory served by the official funeral director. There was no provision for a cash transfer of burial benefits. G.S. 58-226.

The 1967 General Assembly amended Article 24 of Chapter 58 by inserting a new section numbered G.S. 58-224.2, which, in part, provides:

"The Burial Association Commissioner, with the consent of the Commission, and after a public hearing, may promulgate reasonable rules and regulations for the enforcement of this Article and in order to carry out the intent thereof. The Commission is authorized and directed to adopt specific rules and regulations to provide for the orderly transfer of a member's benefits in merchandise and services from the official funeral director of the member's association to the official funeral director of any other mutual burial association in good standing under the provisions of this Article."

The General Assembly by Act effective 21 July 1971 amended G.S. 58-224.2 by inserting the words "cash or" between

the words "in" and "merchandise" so that the pertinent portion of the statute now reads: "The Commission is authorized and directed to adopt specific rules and regulations to provide for the orderly transfer of a member's benefits *in cash* or merchandise and services. . . . " (Emphasis added.) Pursuant to the 1967 and 1971 amendments, the Burial Commissioner with the consent of the Commission and after a public hearing as required by law, on 29 October 1971 duly adopted the following regulation:

> "On and after November 1, 1971, if a member of a Mutual Burial Association dies, the secretary-treasurer of the Burial Association of the deceased member WILL PAY IN CASH 100% of the deceased member's benefits TO ANY OFFICIAL FUNERAL DIRECTOR of a Burial Association that furnishes funeral services. Said payments shall be made within 30 days after the request for payment, which request shall be made in writing by the next of kin of the deceased or by any person who contracts for the burial of the deceased or by the official funeral director furnishing such services when requested to do so by the next of kin or the person contracting for burial of the deceased." (Emphasis added.)

Thus, upon the death of Maggie Bange, the rules duly adopted by the Burial Commissioner pursuant to the amended G.S. 58-224.2 required Orrell to transfer the funeral benefits in cash to Cumby Mortuary, Inc. upon request of the representative of the deceased member. However, Orrell pointing to the fact that when the certificate was issued to Maggie Bange its bylaws adopted pursuant to G.S. 58-226 precluded payment in cash or payment to anyone other than its official funeral director when a member died within the territory served by him, refused to pay the funeral benefits on the ground that the subsequent statutory changes resulted in impairment of its contract, in violation of Article I, Section 10, Clause 1 of the Constitution of the United States.

At the time the certificate was issued to Maggie Bange, G.S. 58-226 required all Mutual Burial Associations to adopt a uniform set of bylaws which were set out in the statute. Article 19 of the required bylaws stated:

> "These rules and bylaws shall not be modified, canceled or abridged by any association or other authority except by act of the General Assembly of North Carolina."

These bylaws were adopted by Orrell Mutual Burial Association and were printed on the certificate issued to Maggie Bange by Orrell.

Any law which enlarges, abridges or changes the intention of the parties as indicated by the provisions of a contract necessarily impairs the contract whether the law professes to apply to obligations of the contract or to regulate the remedy for enforcement of the contract. Article I, Section 10, Clause 1 of the United States Constitution; 16 Am. Jur. 2d, Constitutional Law, § 453; *Graves v. Howard,* 159 N.C. 594, 75 S.E. 998; *Bateman v. Sterrett,* 201 N.C. 59, 159 S.E. 14. An equally well-recognized principle of constitutional law concerning obligations of contracts is that any law affecting the validity, construction and enforcement of a contract at the time of its making becomes a part of the contract as fully as if incorporated therein. *Graves v. Howard, supra; Trust Co. v. Hudson,* 200 N.C. 688, 158 S.E. 244; *House v. Parker,* 181 N.C. 40, 106 S.E. 137; 16 Am. Jur. 2d, Constitutional Law, § 437.

When a Legislature reserves the right to amend or repeal a *Charter,* it retains the power to change the contract between the corporation and the State and the contracts between the corporation and its stockholders so that a later repeal or amendment of the Charter does not result in an unconstitutional impairment of the contract. *Looker v. Maynard,* 179 U.S. 46, 45 L.Ed. 79, 21 S.Ct. 21; *Close v. Glenwood Cemetery,* 107 U.S. 466, 27 L.Ed. 408, 2 S.Ct. 267; *Venner v. U. S. Steel Corp.,* 116 Fed. 1012; *Willis on Constitutional Law,* Personal Liberty: Impairment, page 633 (1936). Further, it is generally recognized that a mutual insurance company may adopt new or altered bylaws which are binding on a member if the member agrees to be so bound when his certificate of membership is issued or if the company reserves the right to make subsequent changes in the bylaws when the certificate is issued. *Knights Templars' & Masons' Life Indemnity Co. v. Jarman,* 187 U.S. 197, 47 L.Ed. 139, 23 S.Ct. 108; *Mutual Assurance Society v. Korn and Wisemiller,* 11 U.S. 396, 3 L.Ed. 383; *Korn and Wisemiller v. Mutual Assurance Society,* 10 U.S. 192, 3 L.Ed. 195; *Modern Woodmen of America v. White,* 70 Colo. 207, 199 P. 965, 17 A.L.R. 393; *Steen v. Modern Woodmen of America,* 296 Ill. 104, 129 N.E. 546, 17 A.L.R. 406; 43 Am. Jur. 2d, Insurance, § 104.

[1] It is therefore evident that the General Assembly may reserve the right to amend bylaws and regulations of a Mutual

Burial Association which it created so as to bind the Association and its members.

In *Helmholz v. Horst,* 294 Fed. 417, the Circuit Court of Appeals, 6th Circuit, considered the effect of an Act of Congress which enlarged the class of beneficiaries who could take under a certificate issued pursuant to the War Insurance Act of October 1917. The amending Act was passed subsequent to the certificate holder's death. The original Act provided that all contracts of insurance issued thereunder should be subject to the provisions of the Act or any amendment thereto. Holding that the amendment did not impair the obligations of the pre-existing contract, the Court stated:

> "In order to insure the accomplishment of the beneficial purposes of the War Risk Insurance Act, it was further provided therein that the terms and provisions of such contracts of insurance *should be subject in all respects to the provisions of the act or any amendments thereto,* and also subject to all regulations thereunder, *now in force or hereafter adopted,* all of which, together with the application for insurance and the terms and conditions published under authority of the act, should constitute the contract. All of these provisions and conditions were written into the certificate issued to Alfred R. Marshall, and became and are a part of the contract. For this reason subsequent amendments of the War Risk Insurance Act and subsequent regulations affecting this contract, which is still in force, do not impair the obligations of an existing contract, but are in direct conformity with its terms, and in furtherance of its purpose and intent." (Emphasis added.)

These general rules of law were recognized and applied by this Court when it considered the effect of a statute which modified the prescribed form of certificates issued by a burial association in the case of *Spearman v. United Mutual Burial Association,* 225 N.C. 185, 33 S.E. 2d 895. There, the original certificate of membership in the Burial Association provided that if a member should die in an area not served by the local funeral director, the secretary should, upon notice, cause the services and benefits provided by the certificate to be furnished and paid for, and upon failure to do so, the amount of the benefits should be paid in cash to the representative of the deceased. A subsequent statute modified the bylaws of the Association by providing that when a member died while serving in the Armed

Forces of the United States, his spouse or next of kin might elect the return of paid-in assessments or the prescribed funeral benefits if at any time the body was returned for burial in the territory served by the Burial Association. The Court, holding that no improper impairment of the obligation of the contract was effected by the subsequent statute, stated:

" . . . True this last Act was ratified subsequent to the issuance of the certificate of membership to plaintiff's intestate, but the certificate sued on, as well as the general statute in force at the time, G.S., 58-226, contained the express provision that the rules and by-laws of the Association might be modified by Act of the General Assembly. Hence the plaintiff's intestate must be held to have accepted the certificate of membership with notice that its provisions could be 'modified, canceled, or abridged' by legislative enactment. Under these circumstances this Act of the General Assembly would not be considered offensive to the constitutional provision against the passage of a law which impairs the obligation of a contract. Cons. United States, Art. I, sec. 10; *Faulk v. Mystic Circle,* 171 N.C., 301, 88 S.E., 431; *Helmholz v. Horst,* 294 F., 417. The constitutional prohibition is qualifed by the measure of control which the state retains over remedial processes. *Home Building & Loan Assoc. v. Blaisdell,* 290 U.S., 432, (434).

"The laws in force at the time of the execution of the contract become a part of the convention. This embraces those which affect its validity, construction, discharge and enforcement. *Bateman v. Sterrett,* 201 N.C., 59, 159 S.E., 14. The modification imposed by the Act of the General Assembly is within the scope of the plan and purpose of the Association, and is not unreasonable. *Strauss v. Life Association,* 126 N.C., 971, 36 S.E., 352; *Wilson v. Heptasophs,* 174 N.C., 628, 94 S.E., 443. . . . "

The exercise of these powers of amendment or repeal by the General Assembly is limited by the rule that any such subsequent amendment or repeal must be reasonable and within the scope and purpose of the original contract. *Wilson v. Order of Heptasophs,* 174 N.C. 628, 94 S.E. 443; *Home Building & Loan Asso. v. Blaisdell,* 290 U.S. 398, 78 L.Ed. 413, 54 S.Ct. 231.

**[2]** In instant case, the provisions of G.S. 58-226 and the certificate issued to Maggie Bange by Orrell contained an express reservation of power by the General Assembly to modify, cancel, or abridge the rules and bylaws of the Association. This was ample notice to both Orrell and the certificate holder of the reservation of power by the General Assembly. The amending statutes and the rules implementing them were reasonable and within the purpose of the Association, i.e., "to provide a plan for each member of this Association for the payment of one funeral benefit."

We hold that the statutory changes subsequent to the issuance of the certificate to Maggie Bange did not result in impairment of contract in violation of Article I, Section 10, Clause 1 of the United States Constitution.

Although not the basis of this decision, we note that other jurisdictions, even without such an express reservation of power by the legislature, hold that retroactive statutory modification of contracts for burial benefits are permissible because such contracts are in a business area subject to the broad regulatory police power of the State. *Metropolitan Funeral System Assoc. v. Forbes,* 331 Mich. 185, 49 N.W. 2d 131. See also, *Annot.:* Burial Service—Pre-Need Contracts, 68 A.L.R. 2d 1251.

**[3]** Finally, we consider the effect of certain conflicting provisions of G.S. 58-226 and G.S. 58-224.2. G.S. 58-226 still provides that the "[Funeral Benefit] . . . shall consist of a funeral in merchandise and service . . . and in no case shall any cash be paid." It also provides that the services shall be rendered by the official funeral director of the Association when a member dies within the territory served by him. The provisions of this statute were in effect prior to the enactment of G.S. 58-224.2 and prior to its amendment by the General Assembly of 1971. The portion of G.S. 58-224.2 which permits payment of funeral benefits in cash to one other than the Association's official funeral director is in irreconcilable conflict with the above stated provisions of G.S. 58-226. The conflicting provisions in G.S. 58-226 (the statute first enacted) must yield to the provision of G.S. 58-224.2, since the later statute represents the latest expression of legislative will and intent. *Bland v. City of Wilmington,* 278 N.C. 657, 180 S.E. 2d 813; *Victory Cab Co. v. City of Charlotte,* 234 N.C. 572, 68 S.E. 2d 433. The prevailing pro-

visions of G.S. 58-224.2 are consistent with the decision of the Court of Appeals.

The decision of the Court of Appeals is

Affirmed.